UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANDIE MOSEBY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No.  EDCV 04-0237-JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On March 3, 2004, Melandie Moseby ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of her application for Supplemental Security Income benefits. On April 13, 2004, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On July 15, 2004, the parties stipulated to a remand under sentence six of 42 U.S.C. Section 405(g) in order to allow the Appeals Council to issue a corrected notice regarding plaintiff's request for review.  (Administrative Record ["AR"] 161-62).

On September 7, 2007, the parties stipulated to reopen the case and thereafter, on September 26, 2007, the Court ordered the case reopened.  Michael J. Astrue, Commissioner of Social Security ("defendant") filed an Answer to the Complaint on November 21, 2007.  On

February 13, 2008, the parties filed their Joint Stipulation. On March 13, 2007, defendant filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.

The matter is now ready for decision.

## BACKGROUND

On January 4, 2002, plaintiff filed an application for Supplemental Social Security Income benefits alleging depression, arthritis in her left leg, and problems with comprehension. (AR at 52-54, 56). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 22, 24-27; 23, 29-32). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 33).

On September 17, 2003, the ALJ conducted a hearing in San Bernardino, California. (See AR at 133-55). Plaintiff appeared at the hearing with counsel and testified. (See AR at 136-42). Venessa Kornegay, plaintiff's mother, testified as a witness at the hearing. (See AR at 142-151). Michael Kania, Ph.D., a medical expert, also testified at the hearing. (See AR at 151-54).

On October 30, 2003, the ALJ issued his decision denying benefits to plaintiff, who was fifteen years old at the time. (AR at 7-14). The ALJ found that plaintiff had the following medically determinable impairments: oppositional defiant disorder, attention deficit hyperactivity disorder, and disruptive behavior disorder. (AR at 13). Nevertheless, the ALJ determined that plaintiff's impairments did not cause more than minimal functional limitations; therefore, the ALJ concluded that plaintiff's impairments were not severe. (AR at 13). The Appeals Council denied plaintiff's timely request for review of the ALJ's decision. (AR at 156-59).

Thereafter, plaintiff appealed to the United States District Court.

///
///
///
///
///

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly considered the opinion of Chun Che Lai, M.D., an examining State Agency psychiatrist.

2. The ALJ failed to properly consider the side effects of plaintiff's medications when making the disability determination.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.   The Three-Step Sequential Evaluation for Minor Claimants**

A person under the age of 18 is considered "disabled" and eligible for Supplemental Security Income benefits if he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitation, and which has lasted, or can be expected to last, for a continuous period of at least 12 months or results in death. 42 U.S.C. § 1382c(a)(3)(C). The Commissioner has developed a three-step sequential evaluation

to determine whether a minor claimant is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.924.

First, the ALJ must determine whether the minor claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the minor claimant is performing substantial gainful work, the claimant is not disabled. At step two, the ALJ must determine whether the minor claimant has a severe impairment. If he or she has a severe impairment, the ALJ moves on to step three and must determine whether the minor claimant's impairment meets or medically equals in severity the criteria for an impairment listed in the Listing of Impairments at 20 C.F.R Part 404, Subpart P, Appendix 1, or whether the impairment is functionally equivalent in severity to a listed impairment. If the minor claimant does not have an impairment that medically meets or equals a listed impairment, or that is not functionally equal in severity to a listed impairment, the minor claimant is not "disabled" under the meaning of the Act, and will not be eligible for benefits. 20 C.F.R. § 416.924(d).

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 1, 1997, plaintiff's alleged onset date. (AR at 11). The ALJ found that plaintiff had the following medically determinable impairments: oppositional defiant disorder, attention deficit hyperactivity disorder ("ADHD"), and disruptive behavior disorder. (AR at 12-13). At step two, the ALJ determined that plaintiff's impairments did not cause more than minimal functional limitations and that her impairments were, therefore, not "severe" within the meaning of 20 C.F.R. Section 416.924(c). (AR at 13). Thus, the ALJ concluded that plaintiff was not disabled. (AR at 14).

**B.    Chun Che Lai, M.D.**

Chun Che Lai, M.D., a State Agency psychiatrist, performed a comprehensive psychiatric evaluation of plaintiff on June 1, 2002. (AR at 117-20). In the report summarizing the examination, Dr. Lai noted that plaintiff stated that she had been on psychiatric treatment for three or four years and had a diagnosis of ADHD. (AR at 117). With regard to plaintiff's family history, Dr. Lai noted that plaintiff lived with her mother, but was sent to six or seven different foster homes and a group home during her mother's recent 10 month incarceration.

(AR at 117-18). Dr. Lai noted that plaintiff had once stolen an electronic gadget and had no history of running away, drug abuse, or physical or sexual abuse. (AR at 118).

Dr. Lai found plaintiff to have retarded motor behavior. (Id.). Dr. Lai noted that plaintiff's concentration and persistence was decreased and that her pace was decreased at the time of the examination. (Id.). Plaintiff stated that she could watch television for a long time but did not like to read. (Id.). He noted that plaintiff had "marked decreased eye contact" but was otherwise fairly cooperative and did not appear to have malinger or factitious behavior or any pain behavior. (Id.). Dr. Lai found that plaintiff had a coherent linear thought process and no delusions, hallucinations, suicidal or homicidal ideations and no obsessions or compulsions. (AR at 118). He opined that plaintiff had low average intellectual functioning at the time of the exam. (AR at 119). During the exam plaintiff stated that she did not listen to people, had behavioral problems, fought in school, cut herself on her wrist once, had problems with concentration, was argumentative, and that her grades were dropping. (AR at 117). Dr. Lai stated that plaintiff was very impulsive, hyperactive, defiant, oppositional and inattentive. (Id.).

Dr. Lai diagnosed plaintiff with "[d]isruptive behavior not otherwise specified" and assessed plaintiff with a Global Assessment of Functioning ("GAF") of 45[1], which indicates severe mental symptoms or serious impairments in social or occupational functioning. (AR at 119-20). Dr. Lai concluded that, based on his exam and plaintiff's current situation, plaintiff "has a psychiatric disorder that most likely can be treated but the likelihood of improvement within 12 months is just fair because she has already been receiving treatment for sometime with just partial improvement." (AR at 120). Dr. Lai determined that plaintiff had the following functional limitations:

> [Plaintiff] is not capable of managing her funds, besides being
> a minor she appears to have inattention and to be opposition

---

[1] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, sever obsessional rituals, frequent shoplifting)" or "[a]ny serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

>[sic] or defiant and not have enough judgment and insight about her illness or about her general life conditions. She does have the ability to perform simple repetitive tasks, detailed and complex tasks but does not have the ability to accept instructions from supervisors or co-workers and to behave appropriately for prolonged periods of time. Per report she is having difficulties in behavioral disturbances in school. She would most likely not be able to interact with co-workers and the public or perform work activities on a consistent basis or maintain regular attendance in a workplace or complete a normal workday, workweek without interruptions from her psychiatric condition.

(AR at 120).

In his decision, the ALJ summarized the opinion of Dr. Lai:

>On June 1, 2002, [plaintiff] underwent psychiatric evaluation at the request of the State Agency. [Plaintiff] was noted to have been in six to seven foster homes and a group home when her mother was incarcerated for 10 months. She reportedly needed structure to attend daily grooming. [Plaintiff] watched television for long periods of time, listened to music and visited with friends. Mental status examination reported [plaintiff] to be tall and thin with fair grooming and hygiene. Retarded motor behavior was noted and she had marked decreased eye contact. Thought process was linear. Content was without delusions, hallucinations, suicidal or homicidal ideations, obsessions or compulsions. Mood was stable and affect was blunted. Memory was intact. Intellectual functioning was low average. Diagnosis was disruptive behavior not otherwise

>specified, rule out oppositional defiance disorder, rule out ADHD inattentive type, and rule out bipolar disorder. Global Assessment Function was 45, indicating serious impairment in social, occupational, or school functioning. [Dr. Lai] stated [plaintiff] could perform simple repetitive tasks as well as detailed and complex tasks but that she did not have ability to accept instructions from supervisors or co-workers and to behave appropriately for prolonged periods of time.

(AR at 12). The ALJ did not discuss Dr. Lai's opinion again in the decision. Instead, the ALJ summarized the remaining medical opinions in the record, including the opinion of Michael Kania, Ph.D., the medical expert who reviewed the medical evidence in the record and testified at the ALJ hearing. (AR at 11-13; see AR at 137, 151-54). The ALJ noted that Dr. Kania testified that plaintiff had non-severe impairments of attention deficit hyperactivity disorder, disruptive behavior disorder, and oppositional defiance disorder. (AR at 12; see AR at 152). The ALJ further noted that Dr. Kania opined plaintiff had no cognitive or communicative development limitations and less than marked difficulty in social functioning and maintaining concentration, persistence, and pace. (AR at 12-13: see AR at 152-53). The ALJ noted that Dr. Kania testified that plaintiff had no functionally equivalent impairments, had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with objects and caring for herself, and had no limitations in her ability to move about and manipulate objects, or in her health and physical well being. (AR at 13; see AR at 153-54). The ALJ gave "great weight" to Dr. Kania's opinion and concluded that the medical evidence established that plaintiff had only minimal functional limitations and was, therefore, not disabled. (AR at 13).

Where medical reports are in conflict, questions of credibility and resolutions of conflicts in the testimony are functions solely of the ALJ. See Morgan v. Comm'r, 169 F.3d at 599; Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988). An ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately

supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). However, an ALJ must provide "specific and legitimate reasons" supported by substantial evidence for rejecting the opinion of an examining physician that is contradicted by that of another physician. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ may meet this burden by setting out a detailed and through summary of the facts and conflicting clinical evidence, stating his or her interpretations thereof, and making findings. Morgan, 169 F.3d at 600-01.

Plaintiff argues that the ALJ erred in finding that plaintiff had minimal functional limitations because the ALJ failed to discuss the opinion of Dr. Lai regarding plaintiff's negative behaviors and the significance of the low GAF score assessed by Dr. Lai. (Joint Stipulation at 4-5, 9). In his decision, the ALJ concluded that plaintiff did not have more than minimal functional limitations and failed to adequately address or reject Dr. Lai's opinion that plaintiff could not accept instructions from supervisors or co-workers, behave appropriately for prolonged periods of time, interact with co-workers and the public, perform work activities on a consistent basis, or maintain regular attendance in a workplace or complete a normal workday or workweek without interruptions from her psychiatric conditions.

The ALJ also did not address Dr. Lai's GAF assessment, which indicated that plaintiff suffered from serious symptoms and serious impairment in social, occupational or school functioning. Because the ALJ failed to set out specific and legitimate reasons to support his decision to reject Dr. Lai's assessment, the ALJ erred in his treatment of Dr. Lai's opinion.

Defendant argues that the ALJ properly rejected Dr. Lai's opinion because it was adequately supported by clinical findings, contradicted other evidence in the record, and "showed very little." (Joint Stipulation at 9). However, the ALJ did not articulate these reasons in his decision. The Court cannot be left to speculate as to what would have been the ALJ's specific reasons for rejecting Dr. Lai's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") Thus, the ALJ erred by failing to offer specific and legitimate reasons for rejecting Dr. Lai's opinion. See

Andrews, 53 F.3d at 1043 (the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of a controverted examining physician).

### C.      Remand is Required to Remedy Defects in the ALJ's Decision

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the Court finds it appropriate to remand this case for further proceedings to allow the ALJ to clarify his findings and apply the correct legal standards. Remand is required so that the ALJ may properly evaluate and address Dr. Lai's opinion. In the event that the ALJ chooses to reject Dr. Lai's opinion, the ALJ must clearly cite to legitimate reasons in support his findings.[2]  See Andrews, 53 F.3d at 1043.

## ORDER

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 19, 2008

                                                         /s/
                                      JENNIFER T. LUM
                                      UNITED STATES MAGISTRATE JUDGE

---

[2] In the Joint Stipulation, plaintiff also contends that the ALJ erred in failing to discuss the dosage and side effects of plaintiff's medications. As explained above, however, the ALJ's error in failing to provide specific and legitimate reasons for disregarding the opinion of Dr. Lai constitutes sufficient reason to remand this case. Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again. In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.